UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Regions Treatment Center, LLC,

        Plaintiff,

v.

        **MEMORANDUM OPINION AND ORDER**
        Civil No. 13-1752 ADM/LIB

New Stream Real Estate, LLC,

        Defendant.

___

Jon R. Brakke, Esq., Vogel Law Firm, Fargo, ND, on behalf of Plaintiff.

Edwin H. Caldie, Esq., Katherine E. Devlaminck, Esq., and Sharon R. Markowitz, Esq., Leonard Street and Deinard, PA, Minneapolis, MN, on behalf of Defendant.

___

## I.  INTRODUCTION

On August 2, 2013, the undersigned United States District Judge heard oral argument on Plaintiff Regions Treatment Center, LLC's ("RTC") Motion for Preliminary Injunction [Docket No. 3], as well as its Amended Motion for Confirmation of Continued Effectiveness of Temporary Restraining Order or for Extension of the Term of the Order [Docket No. 9]. Defendant New Stream Real Estate, LLC ("New Stream"), opposes both motions.  For the reasons set forth below, the motions are denied.

## II.  BACKGROUND

In 2005 and 2007, New Stream made several loans to The Douglas Place, Inc. ("The Douglas Place") and Big Wolf Resort, Inc., in connection with a treatment center operated by The Douglas Place in East Grand Forks, Minnesota.  The loans were secured by interests in various assets, including a mortgage and other interests in real property.  Lai Aff. [Docket No. 21] ¶ 6.  The Douglas Place defaulted on its loans, and in June 2011, New Stream obtained a

money judgment and judgment for foreclosure against the treatment center.

In November 2011, the Douglas Place filed Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Minnesota. New Stream filed a proof of claim for $6,556,342.59 in the bankruptcy case. The Trustee for the bankruptcy action is currently considering administering the bankruptcy through a reorganization instead of selling off the estate's assets, and is thus considering selling stock in the reorganized entity. Caldie Decl. [Docket No. 22] ¶ 7.

In late 2012, RTC and New Stream began negotiating the sale of New Stream's interests in the Douglas Place. These interests included a promissory note in the amount of $3.5 million, stock in the Douglas Place, mortgage interests, security agreements and related documents, and a judgment against the Douglas Place (together, the "Assets"). Finn Aff. [Docket No. 4] ¶ 3. RTC and New Stream eventually agreed on a sale price of $3.5 million for the assets, though they did not finalize the terms of the sale. RTC alleges that it used this tentative agreement to form a separate tentative agreement with the Trustee, in which RTC would exchange the Assets for ownership of certain interests in The Douglas Place after that entity emerges from bankruptcy. Not. of Removal [Docket No. 1] Ex. A at 15.

According to New Stream, negotiation over the terms of its agreement with RTC has continued for months, with the parties still struggling to finalize the agreement in May 2013. Caldie Decl. ¶¶ 2-3. At that time, RTC apparently made a last-minute request to have three weeks after closing to obtain financing for the Assets, to which New Stream acquiesced. Id. ¶ 2. On June 3, 2013, the parties tentatively agreed on the proposed language of their sales agreement. Two days later, on June 5, 2013, New Stream sent RTC a "final, clean Word

version" of the agreement, which reflected all final revisions. Id. at Ex. D. In an email, New Stream's counsel asked RTC's counsel to complete the document by adding RTC's address and then executing a signature page. New Stream's counsel also wrote, in bolded text, that New Stream required receipt of the fully-executed document by no later than the close of business on June 6, 2013, as a "material precondition" to closing. Id.

New Stream claims that RTC did not timely deliver the executed agreement. RTC responds that it had made clear to New Stream that RTC's executive, who would execute the agreement, would be unavailable on June 6, and that New Stream failed to respond to its communications. Regardless, RTC did not deliver a signed copy of the parties' contract by June 6.

In the meantime, on June 5, 2013, another party interested in purchasing the Assets had contacted New Stream. Caldie Decl. ¶ 6. At the time, awaiting the closing of its agreement with RTC, New Stream declined the offer. After RTC failed to deliver an executed copy of the agreement on June 6, however, New Stream restarted its conversation with this second potential purchaser. New Stream eventually agreed to a selling price of $4 million with the new purchaser. Lai Aff. ¶ 5. The potential purchaser has stressed to New Stream that their agreement must be completed by August 13, 2013. Id. Failure to timely close this second deal "will almost certainly undermine" New Stream's ability to sell the Assets to this purchaser. Def.'s Mem. Opp. [Docket No. 19] 12.

On July 3, 2013, RTC filed this action in Polk County, alleging claims for breach of contract, promissory estoppel, and tortious interference with contract. RTC simultaneously filed motions requesting an ex parte temporary restraining order (TRO) as well as a preliminary

injunction enjoining New Stream from selling the Assets to any third party. On the same day, the Polk County District Court granted RTC's TRO request ex parte. On July 5, 2013, New Stream removed this action to federal court. Shortly thereafter, RTC filed the two motions currently before the Court.

### III.  DISCUSSION

**A.  Preliminary Injunction**

In considering a preliminary injunction, courts apply the factors set forth in Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109 (8th Cir. 1981): (1) threat of irreparable harm to the movant; (2) harm to other parties if the relief is granted; (3) probability of movant's success on the merits; and (4) effect on public interest. Id. at 113. The movant "bears the burden of establishing the necessity of this equitable remedy." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 316 (8th Cir. 2009).

**1.  Threat of Irreparable Harm**

RTC has not indicated how it will suffer irreparable harm if its request for a preliminary injunction is denied. Irreparable harm is a threshold requirement for preliminary injunctive relief. Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987). Threat of irreparable harm requires more than a possibility of remote future injury, it requires a presently existing actual threat of injury. Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1982). "Wholly speculative" harm will not justify injunctive relief. Local Union No. 884, United Rubber Workers v. Bridgestone/Firestone, Inc., 61 F.3d 1347, 1355 (8th Cir. 1995). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Rogers Group, Inc. v. City of Fayetteville, Ark.,

629 F.3d 784, 789 (8th Cir. 2010) (quoting Gen. Motors, 563 F.3d at 319).

RTC argues that unless it completes its agreement with New Stream, it will be deprived of the opportunity to acquire the Assets, which are unique interests. While the Assets may be unique, losing the opportunity to complete a business transaction does not amount to an "actual threat of injury" justifying injunctive relief. In addition, RTC's claim of injury is speculative. RTC intended to complete its agreement with New Stream to acquire the Assets, which it intended in turn to offer to the bankruptcy Trustee in a tentative agreement for ownership interests in a yet-to-be-reorganized bankrupt entity. This chain of possibilities is far too remote to warrant equitable relief, and RTC has offered minimal argument or evidence to support its alleged harm. Finally, RTC makes no argument as to why damages would be inadequate to compensate for RTC's alleged loss. See, e.g., Gelco, 811 F.2d at 420 (holding lost opportunity to participate in merger was compensable through money damages). This factor favors New Stream.

### 2. Balance of Harms

The next Dataphase factor is the balance between the irreparable harm to the movant, if any, and the injury granting an injunction will cause to the other interested parties. Dataphase, 640 F.3d at 113. In comparison to RTC's speculative injury, New Stream argues it will suffer significant harm if a preliminary injunction is granted. New Stream executed a letter of intent with its other potential purchaser, by which it may sell the Assets if the agreement is completed by August 13, 2013. If New Stream is enjoined from selling the Assets but ultimately prevails on the underlying claims, it argues, it has no guarantee it will be able to find a suitable purchaser for the Assets. New Stream also argues that changing circumstances, such as reorganization,

could lower the Assets' value and harm New Stream's bargaining position.

New Stream's potential harm is speculative in ways similar to the irreparable harm claimed by RTC. Although New Stream has indicated how it stands to lose a viable opportunity to sell the Assets if a preliminary injunction is issued, this opportunity is not a concrete transaction waiting to be completed. Instead, the parties have only entered into a tentative agreement regarding the Assets, much as New Stream had done with RTC. Also, while the bankruptcy action may affect the Assets' value, New Stream does not indicate how, when, and to what degree such changes might occur. As a result, New Stream's claimed harms do not clearly outweigh those claimed by RTC, and this factor favors neither party.

### 3. Likelihood of Success on the Merits

RTC's claim for breach of contract—the only claim for which specific performance is an appropriate remedy in this case—is unlikely to succeed on the merits. Because the parties' agreement involved interests in real property, including a mortgage interest, the Minnesota statute of frauds required both parties to record their agreement in writing. Minn. Stat. § 513.04; see, e.g., Hecht v. Anthony, 283 N.W. 753, 754 (Minn. 1939) ("It is true that an agreement to give a real estate mortgage is within the statute of frauds."). However, there is no evidence in the record, nor does RTC argue, that New Stream executed and delivered a final contract to RTC. As a result, the contract between the parties remains incomplete and unenforceable.

RTC attempts to avoid this conclusion by arguing that a party who has not signed a contract may still enforce that contract against another party, so long as the first party agreed to the contract and acted in conformity with it. Poser v. Abel, 510 N.W.2d 224, 228 (Minn. Ct. App. 1994). RTC has correctly stated the principle of the law. However, in this case the

situation is reversed: RTC is the party who signed the contract and attempted to act in accordance with it.  As a result, New Stream could potentially enforce the contract against RTC, not vice versa.  RTC has cited no decision standing for the proposition that a contract may be enforced against a party who has declined to sign it.

In addition, New Stream argues that it required RTC to deliver an executed copy of the agreement by June 6, 2013, as a condition precedent to the formation of the contract.  In its response, RTC confuses conditions precedent to the formation of a contract with conditions precedent to the performance of an obligation.  With a condition precedent to the formation of a contract, the condition must be satisfied before a contract becomes enforceable.  See Unitarian Universalist Church of Minnetonka v. City of Wayzata, 890 F. Supp. 2d 1119, 1125 (D. Minn. 2012).  With a condition precedent to the performance of an obligation, a contract already exists, but the duty to perform is not triggered until the condition is met.  See id.

This case involves a condition precedent to the formation of a contract.  "[W]here the parties know that the execution of a written contract was a condition precedent to their being bound, there can be no binding contract until the written agreement was executed."  Dataserv Equip., Inc. v. Tech. Fin. Leasing Corp., 364 N.W.2d 838, 841 (Minn. Ct. App. 1985) (citing Staley Mfg. Co. v. N. Coops., Inc., 168 F.2d 892 (8th Cir. 1948)).  The record clearly indicates the parties' intent to be bound by the contract only after both parties had executed a signature page.  Because that condition was not met, a binding contract did not form.

RTC's remaining claims, for promissory estoppel and tortious interference, are sparsely pled and unsupported by evidence at this stage, making their likelihood of success unclear.  Regarding promissory estoppel, New Stream argues that this doctrine may not be used to remove

a contract from the requirements of the statute of frauds. Thus, New Stream argues RTC's promissory estoppel claim must fail in the same manner as RTC's breach of contract claim. New Stream is not entirely correct. Where promissory estoppel is offered to escape the statute of frauds, it sounds in equity. However, to "invoke the power that equity possesses to trump the statute of frauds," the plaintiff must demonstrate "unconscionable" injury which "flows naturally . . . from the non-performance of the unenforceable agreement." InCompass IT, Inc. v. XO Commc'ns Servs., Inc., --- F.3d ----, 2013 WL 3198183, at *6 (8th Cir. 2013) (internal quotations and citations omitted). RTC has made no showing of suffering an "unconscionable" injury, meaning its promissory estoppel claim is unlikely to survive the statute of frauds defense.

At oral argument, RTC also raised the doctrines of equitable estoppel and partial performance as potential theories of recovery. As indicated above, RTC may pursue money damages for any reliance costs it incurred independently of its injunctive relief. Similarly, if New Stream interfered with an actual agreement between RTC and the Trustee, RTC may seek money damages for tortious interference as well. As a result, this factor overall does not favor injunctive relief.

### 4. The Public Interest

The final Dataphase factor is the public interest. Dataphase, 640 F.3d at 113. Generally the public interest favors enforcing contracts. Benfield, Inc. v. Moline, 351 F. Supp. 2d 911, 919 (D. Minn. 2004). As discussed, it does not appear RTC possesses a binding, enforceable contract, meaning the public's interest in enforcing contracts does not apply. Even so, RTC argues that New Stream has acted inequitably by deliberately sabotaging the contracting process, and the public has an interest in remedying such conduct. If New Stream did indeed engineer a

sudden stop to the negotiations, the underlying litigation will satisfactorily serve the public's interest in seeing that such conduct is not rewarded. And perhaps more importantly, where the parties have negotiated a contract regarding the sale of interests in real property, the public has an interest in the consistent application of the statute of frauds. As a result, this factor slightly favors New Stream.

### B. Temporary Restraining Order

RTC's request to extend the TRO issued by the Polk County District Court is denied. As discussed above, RTC has not demonstrated circumstances justifying injunctive relief, and this same reasoning applies in denying RTC's request to extend the TRO.

Even if the rationale for denying injunctive relief did not apply, RTC's time in which to obtain an extension of the TRO has expired. When a state court issues an ex parte temporary restraining order, and the action is then removed to federal court, the time limits of Rule 65 of the Federal Rules of Civil Procedure apply. See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70, 415 U.S. 423, 438-39 (1974). As a result, Rule 65(b)(2)'s 14-day time limit for temporary restraining orders began running once New Stream removed this action to federal court. Id.; Fed. R. Civ. P. 65(b); see also Kelley v. First Westroads Bank, 840 F.2d 554, 558-59 (8th Cir. 1988). New Stream removed this action on July 5, 2013, making the TRO effective until July 19, 2013. Although RTC moved to extend the TRO on July 15, 2013, it did not obtain a timely hearing date for the motion. As a result, the Court did not issue an order extending the TRO within the 14-day time limit, and the TRO expired. Fed. R. Civ. P. 65(b)(2) ("The [TRO] expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party

consents to a longer extension.").

## IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Regions Treatment Center, LLC's Motion Amended Motion for Confirmation of Continued Effectiveness of Temporary Restraining Order [Docket No. 9] is **DENIED**; and

2. Plaintiff Regions Treatment Center, LLC's Motion for Preliminary Injunction [Docket No. 3] is **DENIED**.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  August 7, 2013.