UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Regions Treatment Center, LLC,

   Plaintiff,

               **MEMORANDUM OPINION**
v.               **AND ORDER**
               Civil No. 13-1752 ADM/LIB

New Stream Real Estate, LLC,

   Defendant.

___

Jon R. Brakke, Esq., Vogel Law Firm, Fargo, ND, on behalf of Plaintiff.

Edwin H. Caldie, Esq., Katherine E. Devlaminck, Esq., and Sharon R. Markowitz, Esq., Leonard Street and Deinard, PA, Minneapolis, MN, on behalf of Defendant.

___

## I. INTRODUCTION

On October 23, 2013, the undersigned United States District Judge heard oral argument on Defendant New Stream Real Estate, LLC's ("New Stream") Motion to Dismiss the Complaint [Docket No. 12] and Plaintiff Regions Treatment Center, LLC's ("RTC") Motion to Amend the Complaint [Docket No. 39]. For the reasons set forth below, New Stream's motion is granted, and RTC's motion is denied.

## II. BACKGROUND

Defendant New Stream holds loans, a judgment, and other interests in The Douglas Place, Inc., a rehabilitation center, and its related entities (together, the "Douglas Place"). Not. of Removal [Docket No. 1] Ex. A (Complaint) ¶ 3. In November 2011, the Douglas Place filed Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Minnesota. See id. ¶ 16.

In late 2012, RTC began negotiating for the purchase of New Stream's interests in the

Douglas Place. These interests included a promissory note payable by the Douglas Place in the amount of $3.6 million, stock in the Douglas Place, a mortgage, an assignment of leases, liens on the Douglas Place's personal property, and a judgment against the Douglas Place (together, the "Assets"). Id. ¶ 3. RTC and New Stream eventually agreed on a sale price of $3.5 million for the Assets, but did not finalize the terms of the sale. Id. ¶ 5. New Stream also informed RTC that it had been approached by a second buyer who was interested in purchasing the Assets, but that New Stream intended to complete its sale to RTC. RTC alleges that it used its tentative agreement with New Stream to form a separate tentative agreement with the Trustee for the Douglas Place bankruptcy estate, in which RTC planned to exchange the Assets for ownership of certain interests in the Douglas Place after that entity emerged from bankruptcy. Id. ¶ 16.

Negotiations over New Stream's sale of the Assets to RTC continued for months, and the parties reached a general agreement as to the ancillary terms of sale by May 2013. Id. ¶ 7. On June 5, 2013, New Stream sent RTC a "final, clean Word version" of the agreement, which reflected all final revisions. Supp. Caldie Decl. [Docket No. 37] Ex. A (email dated June 5, 2013), Ex. B (the "Agreement"). New Stream's counsel asked RTC's counsel to review the final terms and have RTC complete the Agreement by adding RTC's address to the opening paragraph and then executing the signature page. Id. at Ex. A. New Stream's counsel also wrote that, due to a delay in RTC's efforts to obtain funding, RTC must execute the contract documents by no later than the next day, June 6, 2013. Id. RTC's attorney ultimately executed the Agreement on June 7, 2013, but New Stream never delivered a countersigned Agreement. See id. at Ex. B.

RTC argues New Stream's June 6, 2013 deadline was an arbitrary condition imposed to sabotage negotiations and allow New Stream to avoid completing the contract. See Compl. ¶ 9.

RTC alleges the parties had already made a binding agreement prior to June 6, and that New Stream's failure to formally execute the Agreement by this date did not prevent New Stream from being bound to the Agreement. Id. ¶¶ 7-8.

On July 3, 2013, RTC filed this action in Polk County, Minnesota, alleging claims for breach of contract, promissory estoppel, and tortious interference with contract. RTC simultaneously filed motions requesting an ex parte temporary restraining order (TRO) as well as a preliminary injunction enjoining New Stream from selling the Assets to any third party. On the same day as it was filed, the Polk County District Court granted RTC's ex parte TRO request.

On July 5, 2013, New Stream removed this action to federal court. Shortly thereafter, RTC filed two motions seeking continued injunctive relief [Docket Nos. 3, 6]. This Court denied both motions. Order, August 7, 2013 [Docket No. 28]. On July 26, 2013, New Stream moved to dismiss the Complaint, and on October 1, 2013, RTC moved for leave to amend the Complaint, seeking to supplement its allegations and add several new claims.

### III. DISCUSSION

Rule 12(b)(6) of the Federal Rules of Civil Procedure states a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. In ruling on a motion to dismiss, the court views the pleadings in the light most favorable to the nonmoving party. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994) (citation omitted). The court also assumes the truth of the complaint's factual allegations, but "must reject conclusory allegations of law and unwarranted inferences." Silver v. H&R Block, Inc., 105 F.3d 394, 397 (8th Cir. 1997). In addition, the ruling court may not consider evidence or allegations outside of the pleadings, but

"documents necessarily embraced by the complaint are not matters outside the pleading[s]." Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012) (citation omitted).

RTC has moved for leave to amend the Complaint. See Am. Complaint [Docket No. 40] ("Proposed Amended Complaint"). Under Rule 15 of the Federal Rules of Civil Procedure, the ruling court should "freely give leave [to amend] when justice so requires." However, "[t]here is no absolute or automatic right to amend." Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 224 (8th Cir. 1994). "A district court may appropriately deny leave to amend where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1065 (8th Cir. 2005) (internal quotations omitted).

RTC's original claims are addressed first, followed by RTC's proposed additional claims. Where amended factual allegations might alter the analysis with regard to the original claims, such considerations are noted.

**A. Breach of Contract**

In its motion, New Stream argues no enforceable contract exists between the parties. First, New Stream asserts it never executed or delivered the Agreement to RTC, meaning no written agreement was formed. Second, New Stream argues that no enforceable oral contract exists because the statute of frauds bars oral agreements conveying interests in real property.

RTC argues for the enforcement of the Agreement on several grounds. First, RTC argues a written contract exists by citing the June 5, 2013 email from New Stream's counsel.[1] In this

---

[1] This email exhibit is arguably not embraced by the Complaint, but is expressly referenced in the Proposed Amended Complaint. Because the Court conducts both a motion to dismiss and a motion to amend futility analysis regarding RTC's original claims, it incorporates the enhanced allegations of the Proposed Amended Complaint here. See Proposed Am. Compl. ¶¶ 22-24.

email, New Stream's counsel wrote he had "already asked New Stream to execute the document and provide a signature page." Supp. Caldie Decl. Ex. A.  In essence, RTC assumes based on this representation that New Stream executed the Agreement, and that even if it did not then deliver the executed contract to RTC, it nonetheless bound itself.  Second, RTC argues the parties' partial performance of the Agreement removes it from the statute of frauds.  Third, in the alternative, RTC argues that only part of the Agreement concerns interests in real property, presumably contending that at least part of the Agreement is enforceable.  Finally, RTC argues public policy requires a rejection of the statute of frauds defense in this case, and thus the oral contract between the parties should be enforced.

In both the Complaint and the Proposed Amended Complaint, RTC has failed to state a claim for breach of contract.  No enforceable written contract exists between the parties.  A written offer for a sale involving real estate must be accepted in writing, and the "written acceptance must be delivered to the other party or that party's agent to create a binding contract." McLaughlin v. Heikkila, 697 N.W.2d 231, 235-36 (Minn. Ct. App. 2005).  Without "written acceptance and delivery to the other party to the agreement," no contract will form. Id. at 236 (emphasis added).  As courts in Minnesota have long held, "On the execution of a contract in writing, delivery is ordinarily an essential element.  Delivery puts into the writing evidencing the contract the 'breath of life,' and the contract must be construed as of the date of delivery and as the parties understood it under the then surrounding circumstances." Wm. Lindeke Land Co. v. Kalman, 252 N.W. 650, 652 (Minn. 1934).  In this case, although RTC delivered its executed copy of the Agreement to New Stream, New Stream never delivered the fully executed copy of the Agreement back to RTC. See Supp. Caldie Decl. Ex. A.  Without such delivery, no mutual acceptance of the Agreement occurred, and no written contract formed.

The statute of frauds also bars enforcement of an oral contract between the parties.  RTC

alleges that before reducing their contract to writing, the parties reached an agreement as to sale terms in May 2013. But a contract for real estate interests must be made in writing. <u>Bey v. Keeping</u>, 256 N.W.140, 142 (Minn. 1934); Minn. Stat. § 513.04 (requiring all conveyances of interests in land except certain leases be made in writing). Several of the Assets are interests in land, and thus the statute of fraud bars their sale by oral agreement.

In addition, the Agreement cannot be "severed" so that part of the sale may be enforced outside the statute of frauds. Minnesota courts have declined to sever or divide a contract for both real and personal property when the contract as a whole addresses both. <u>In re Roberts Estate</u>, 277 N.W. 549, 551 (Minn. 1938) ("Where the consideration for the agreement is entire, e.g., services to be rendered, and the property contemplated consists of both realty and personalty, the agreement is regarded as entire in its nature, and, failing in part, the whole fails.") (quotation omitted); <u>see also</u> <u>Schaadt v. St. Jude Med. S.C., Inc.</u>, No. 05-cv-1167, 2007 WL 2331953, at *3 (D. Minn. Aug. 14, 2007) (citing <u>Welsh v. Welsh's Estate</u>, 181 N.W. 356, 357-58 (Minn. 1921)) (accord).

Finally, neither the doctrine of partial performance nor public policy supports an exception to the statute of frauds in this case. Minnesota courts have recognized an exception to the statute of frauds where the parties have partially performed under the alleged contract. Such contracts have been enforced where the parties' conduct "cannot reasonably be explained except by reference to some contract between them," <u>or</u> where not enforcing the contract would cause "extreme hardship" and "irreparable injury." <u>Burke v. Fine</u>, 51 N.W.2d 818, 820 (Minn. 1952); <u>Timm v. Berks</u>, No. C4-94-240, 1994 WL 542866, at *5 (Minn. Ct. App. Sept. 30, 1994) (affirming enforcement of oral agreement for sale of real property where buyer subsequently constructed home on property and seller accepted payments); <u>LaBeau v. Buechler</u>, No. A10-739, 2010 WL 5071368, at *3 (Minn. Ct. App. Dec. 14, 2010) (affirming enforcement of oral

6

agreement where buyer took possession of real property and made payments "for at least four years").

RTC has not specifically alleged partial performance occurred under the Agreement, and even if it has, it has not alleged the sort of extreme hardship necessary to circumvent the statute of frauds. In the original Complaint, RTC does not allege any partial performance whatsoever. In the Proposed Amended Complaint, RTC alleges paying almost $20,000 in fees to obtain financing and to conduct inspections in preparation for the Agreement. Proposed Am. Compl. ¶ 16. RTC does not allege that it paid these fees to New Stream, or that the Agreement required the payment of these fees to a third party in satisfaction of a condition in the Agreement. A party's independent expenditure incurred in anticipation of a contract is not the same as paying expenses in partial satisfaction of the contract itself. RTC has not alleged its own partial performance, let alone partial performance by New Stream. Thus, this is not a case in which the parties' conduct can only "reasonably be explained" by referring to a contract between them. Burke, 51 N.W.2d at 820. And even if RTC's payment of fees constituted partial performance, it would not qualify as the sort of "extreme hardship" courts have found to warrant an exception from the statute of frauds. See, e.g., Brown v. Hoag, 29 N.W. 135, 138-39 (Minn. 1886) (allowing enforcement of contract where party has so changed his position that it would otherwise result in "unconscientious injury and loss"). Similarly, the Court will not circumvent the statute of frauds on public policy grounds. Declining to enforce the statute of frauds would only encourage the sort of uncertainty the statute is intended to prevent.

### B. Promissory Estoppel

Alternatively to its breach of contract claim, RTC alleges promissory estoppel based on its reliance on New Stream's representations that New Stream intended to complete the Agreement. The parties disagree as to whether the Minnesota statute of frauds bars promissory estoppel when real property interests are involved. New Stream argues that under Minnesota law, the statute of frauds categorically prevents promissory estoppel claims related to interests in real estate. RTC responds that a promissory estoppel claim may bypass the statute of frauds if justice so requires.

Minnesota law in this area is somewhat unclear, but favors RTC's position. The Minnesota Supreme Court has recognized three alternatives with regard to the application of the statute of frauds to promissory estoppel claims. First, promissory estoppel may defeat the statute of frauds only when the promise at issue is a promise to reduce the contract to writing. Second, promissory estoppel may never defeat the statute of frauds. Third, promissory estoppel may overcome the statute of frauds if the enforcing party has incurred detrimental reliance "of such character and magnitude" that declining to enforce the promise would result in fraud. Mere refusal to perform an oral promise, "unaccompanied by unconscionable conduct," will not justify disregarding the statute. Del Hayes & Sons, Inc. v. Mitchell, 230 N.W.2d 588, 593-94 (Minn. 1975); see also Casazza v. Kiser, 313 F.3d 414, 421-22 (8th Cir. 2002) (interpreting Del Hayes).

Although the Minnesota Supreme Court has not formally adopted one of these three approaches, both the Minnesota Court of Appeals and the Eighth Circuit have favored the third, "less restrictive" approach urged by RTC. See, e.g., Casazza, 313 F.3d at 422 ("We might be inclined to agree . . . that Minnesota does not endorse such a hard-nosed view."); InCompass IT, Inc. v. XO Commc'ns Servs., Inc., 719 F.3d 891, 896-99 (8th Cir. 2013) (in determining whether

plaintiff's promissory estoppel claim sounded in equity, the court held promissory estoppel may circumvent the statute of frauds where "unconscionable injury" was demonstrated); see also Hovey v. Rooney, No. A07-0917, 2008 WL 933529, at *4-5 (Minn. Ct. App. Apr. 8, 2008) (dismissing promissory estoppel claim because contract existed, but noting promissory estoppel could overcome statute of frauds "to avoid injustice") (citation omitted).

Even under the less restrictive view of promissory estoppel and the statute of frauds, RTC has failed to state a claim. In the Complaint, RTC fails to allege any injury from reliance, a necessary element. Olson v. Synergistic Techs. Bus. Sys., Inc., 628 N.W.2d 142, 152 (Minn. 2001) (listing elements of promissory estoppel). The allegations of the Proposed Amended Complaint also fail to state a promissory estoppel claim. RTC alleges incurring nearly $20,000 in financing fees and inspection costs in preparation for the Agreement. Proposed Am. Compl. ¶ 16. Incurring expenses in preparation for a large transaction is not unusual, and RTC's expenditure of $20,000 dollars in financing fees and other routine costs in anticipation of a $3.5 million purchase does not reflect "unconscionable injury." New Stream's alleged conduct, in both the original Complaint and the Proposed Amended Complaint, while perhaps opportunistic, is not unjust or harm "of such character and magnitude" that it amounts to fraud.

### C. Tortious Interference

In the Complaint, RTC broadly alleges New Stream interfered with its "business prospects and contractual relations." RTC alleges it had negotiated "an agreement in principal" with the Douglas Place bankruptcy Trustee based on RTC's expected ownership of the Assets. Compl. ¶ 16. New Stream allegedly interfered with this tentative deal by abandoning the Agreement, and by its "recent communications" with the Trustee. Id. ¶¶ 16-17. The Complaint offers nothing beyond these conclusory and vague allegations. In the Proposed Amended

Complaint, RTC splits this claim in two, stating one claim for interference with business prospects, and another for interference with contractual relations. But RTC does not materially supplement its supporting factual allegations.

Even with the proposed amendments, RTC's tortious interference allegations fail to state a claim. RTC's division of its tortious interference claims into separate torts of interference with business prospects and interference with an actual contract is appropriate. To state a claim for tortious interference with business prospects, a plaintiff must allege: "(1) intentionally and improperly interfer[ing] with another's prospective contractual relation; (2) by either (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation." Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc., 826 N.W.2d 816, 826 (Minn. Ct. App. 2013) (internal quotations omitted).[2] The alleged interference must be more than lawful conduct or competition; it must be wrongful. Edeh v. Equifax Information Servs., LLC, 919 F. Supp. 2d 1006, 1016 (D. Minn. 2013); Eller v. Nat'l Football League Players Ass'n, 731 F.3d 752, 759 (8th Cir. 2013). RTC has not indicated how the alleged interference was wrongful. RTC does not allege New Stream induced the Trustee to abandon his negotiations with RTC. And New Stream's decision to reject a proposed contract does not constitute wrongful interference with a second tentative agreement between RTC and the Trustee. To label such conduct tortious would impose an unjustifiable and unforeseeable web of liability on any party negotiating a transaction.

RTC has also failed to state a claim for tortious interference with contractual relations.

---

[2] As the Minnesota Court of Appeals recognized, this tort goes by several names, including "tortious interference with prospective advantage, . . . tortious interference with prospective economic advantage, tortious interference with business expectancy, wrongful interference with business relations or relationships, tortious interference with prospective contractual relations or relationships, and wrongful interference with prospective contractual relations or relationships." Gieseke, 826 N.W.2d at 825.

To state a claim for tortious interference with contract (as opposed to a prospective contract), a plaintiff must allege: "(1) the existence of a contract; (2) knowledge of the contract by the alleged wrongdoer; (3) intentional procurement of the contract's breach; (4) absence of justification; and (5) damages caused by the breach." Metge v. Cent. Neighborhood Improvement Ass'n, 649 N.W.2d 488, 500 (Minn. Ct. App. 2002).  RTC's claim fails because RTC has not alleged the existence of an actual contract between itself and the Trustee; it has alleged only an "agreement in principal."  Proposed Am. Compl. ¶ 79.  Even if RTC had alleged an actual contract, as discussed above, it has not demonstrated wrongful conduct.

### D. Proposed Fraud Claims

In the Proposed Amended Complaint, RTC alleges New Stream made assurances that it intended to go forward with the sale of the Assets, and that New Stream would make arrangements if necessary to execute the Agreement after RTC's president, Alan Peterson, returned from vacation in June 2013.  Based on these assurances, RTC alleges Peterson left on vacation and was thus unable to comply with New Stream's sudden demand of executing the Agreement by June 6, 2013.  Proposed Am. Compl. ¶¶ 14-15, 23-27.  RTC alleges New Stream made its assurances, and imposed the deadline, in an effort to sabotage the deal.  Id. ¶¶ 24-25. Thus, RTC proposes three additional claims, for common law fraud, intentional misrepresentation, and negligent misrepresentation.

#### 1. Fraud and Intentional Misrepresentation

Under Minnesota law, common law fraud encompasses intentional misrepresentation. Dvorak v. Maring, 285 N.W.2d 675, 678 n.4 (Minn. 1979) ("While the plaintiff's complaint also alleged fraud, we see no distinction between a theory of recovery based on intentional misrepresentation and one based on fraud."); see also Iverson v. Johnson Gas Appliance Co., 172

F.3d 524, 529 (8th Cir. 1999) (accord). To state a claim for intentional misrepresentation, a plaintiff must allege the defendant:

> (1) made a representation (2) that was false (3) having to do with a past or present fact (4) that is material (5) and susceptible of knowledge (6) that the representor knows to be false or is asserted without knowing whether the fact is true or false (7) with the intent to induce the other person to act (8) and the person in fact is induced to act (9) in reliance on the representation (10) that the plaintiff suffered damages (11) attributable to the misrepresentation.

M.H. v. Caritas Family Servs., 488 N.W.2d 282, 289 (Minn. 1992).

RTC's fraud claim is futile because RTC has alleged neither a material misrepresentation nor how the misrepresentation caused damage. It is not apparent why RTC's President's vacation plans became instrumental to the execution of the Agreement, meaning it is unclear why New Stream's assurances in this regard were material. RTC does not allege Peterson was the only person in the company who could sign the Agreement. The Agreement itself demonstrates RTC had the ability to authorize one of its agents, in this case an attorney, to execute the contract in Peterson's absence. Supp. Caldie Decl. Ex. B. And if Peterson's personal review of the Agreement was critically necessary before signing, it is further evidence that no final contract had yet formed. Even if New Stream's alleged misrepresentations relating to Peterson's vacation plans were material, RTC has not alleged how these misrepresentations caused damage. As New Stream argues, and RTC implicitly concedes, even if Peterson had not gone on vacation, RTC would still be in the position it is now: without a countersigned, and thus enforceable, written agreement. See Proposed Am. Compl. ¶ 31 ("Despite repeated demands, Defendant has refused and failed to proceed forward to close on sale of the Assets to Plaintiff."). RTC has not plausibly alleged how executing the Agreement on June 6—as opposed to when it was actually executed on June 7—would have caused New Stream to move forward with the

transaction. Thus, RTC's fraud claim is futile.

### 2. Negligent Misrepresentation

RTC's proposed claim for negligent misrepresentation is also futile because RTC does not allege any facts indicating a special relationship with New Stream. As sophisticated, adversarial parties with counsel bargaining in an arms-length transaction, neither RTC nor New Stream owed the other any special duty. Safeco Ins. Co. of Am. v. Dain Bosworth, Inc., 531 N.W.2d 867, 871-73 (Minn. Ct. App. 1995); Children's Broad. Corp. v. Walt Disney Co., 245 F.3d 1008, 1019-20 (8th Cir. 2001). As a result, New Stream cannot be liable to RTC for negligent misrepresentation.

### E. Proposed Good Faith and Fair Dealing Claim

Because no enforceable contract exists between the parties, RTC's claim for good faith and fair dealing cannot survive. Cox v. Mortg. Elec. Registration Sys., Inc., 685 F.3d 663, 670-71 (8th Cir. 2012) ("[A] cause of action for good faith and fair dealing cannot exist independent of the underlying breach of contract claim in the sense that an enforceable contract must exist before the duty of good faith and fair dealing can be implied by law into it.") (internal quotation omitted); see also Minnwest Bank Cent. v. Flagship Props. LLC, 689 N.W.2d 295, 303 n.5 (Minn. Ct. App. 2004) ("The implied covenant of good faith and fair dealing does not apply to sales contracts . . . .").

### F. Injunctive Relief/Specific Performance

In both the Complaint and Proposed Amended Complaint, RTC states a claim for injunctive relief and specific performance. Injunctive relief and specific performance are not stand-alone claims but remedies. Because RTC's claims are dismissed and its proposed amended claims futile, this claim is also dismissed.

## IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant New Stream Real Estate, LLC's Motion to Dismiss [Docket No. 12] is **GRANTED**;

2. Plaintiff Regions Treatment Center, LLC's Motion for Leave to Amend the Complaint [Docket No. 39] is **DENIED**; and

3. All claims in the Complaint [Docket No. 1-1] are **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


    s/Ann D. Montgomery  
ANN D. MONTGOMERY  
U.S. DISTRICT JUDGE

Dated:  January 10, 2014.